## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 8:09CR92** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **MIGUEL GASTELO-ARMENTA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Findings and Recommendation (Filing No. 59) issued by Magistrate Judge F.A. Gossett recommending that the motion to suppress (Filing No. 23) filed by the Defendant, Miguel Gastelo-Armenta, be denied. Gastelo filed a statement of objections to the Findings and Recommendation and a supporting brief (Filing Nos. 62, 63) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The government responded (Filing No. 64).

Gastelo is charged together with a codefendant in an Indictment with: conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine (Count I); conspiracy to distribute and possess with intent to distribute cocaine (Count II); possession with intent to distribute 500 grams or more of methamphetamine (Count III); possession with intent to distribute cocaine (Count IV); and criminal forfeiture (Count V). Gastelo seeks the suppression of evidence and statements obtained as a result of a March 13, 2009, traffic stop.

Following an evidentiary hearing, Judge Gossett issued a thorough Findings and Recommendation, in which he concluded: minor traffic violations provided probable cause for the traffic stop; Officer Michael Bossman developed a reasonable articulable suspicion of criminal activity justifying Gastelo's detention for further investigation; Officer Bossman

violated Gastelo's Fourth Amendment rights with his conduct during the canine search; the constitutional violation was not a "substantial and deliberate" violation of Gastelo's Fourth Amendment rights; and the evidence inside the vehicle would have been discovered regardless of the constitutional violation. Judge Gossett therefore recommends that the motion to suppress be denied.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendations to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## STATEMENT OF FACTS

Judge Gossett provided a very detailed account of the events surrounding the traffic stop and the canine search. The Court has considered the transcript of the hearing and very carefully viewed the evidence, including the DVD of the canine search. The Defendant objects to the factual finding that the dog, Skeen, displayed alert behavior before Officer Bossman let him inside the vehicle. This objection is discussed below. Otherwise, based on the Court's de novo review of the evidence and arguments, the Court hereby adopts the remainder of Judge Gossett's factual findings.

## FACTUAL BACKGROUND

Briefly, certain officers suspected that a red Cadillac was involved in drug activity, and, at their direction, Officer Bossman found probable cause to stop the Cadillac. Officer

Bossman worked with a drug dog, Skeen. Gastelo, the driver of the Cadillac, was cited for not producing a valid driver's license. Officer Bossman asked for permission to search the car, and Gastelo declined. Officer Bossman then told Gastelo and one of his three passengers that he would use his drug K-9 to search the "exterior" of the car. (Tr. 80:2-3.) The passengers left both passenger-side doors open. Officer Bossman closed the rear door, but he did not close the front passenger door. Officer Bossman and Skeen then began a search of the car, starting on the driver's side near the trunk. They proceeded along the passenger side, across the front, and back on the driver's side. They circled the car four times. The first time, Skeen showed no alert-type[1] behavior, but he did put his snout into the interior of the car through the open door. The search continued with the door open, and, at the beginning of the second pass, Skeen jerked his head back near the rear license plate. Judge Gossett found that to be alert-type behavior, though not an indication. During the second pass, Officer Bossman directed Skeen to jump into the car. Skeen did so and stayed inside for a couple of seconds. On the third pass, Skeen paused and took a big sniff at the same spot where he jerked his head on the second pass. Judge Gossett also found this action to be an alert. Skeen again jumped into the car through the front passenger door, and this time he stayed inside for about eight seconds. Skeen jumped into the back seat, rammed his nose into the place where the seat and back cushion meet, and then he exited the car. Finally, Officer Bossman shut the door. At the end of the fourth pass, Skeen indicated by scratching on the taillight and back quarter panel area on the

---

[1]Officer Bossman testified that an "alert" is a change in a dog's behavior indicating that a dog detects the odor of illegal narcotics. An "indication" is a dog's behavior when it has found the strongest source of the odor. (Filing No. 52, 38:7-19.)

3

driver's side. The entire canine sniff lasted about two minutes. Based on Skeen's indication, Officer Bossman opened the trunk, opened the duffle bag found there, and found suspected controlled substances, a scale, and wrapping material.

Gastelo objects to the following portions of the Findings and Recommendation: the legal conclusion that the exclusionary rule does not apply because Officer Bossman's actions were not a "substantial and deliberate" violation of Gastelo's Fourth Amendment rights; the factual finding that Skeen displayed alert behavior before he was allowed inside the car; and the legal conclusion that the exclusionary rule is not an appropriate remedy because Skeen's entry into the vehicle was not a but-for cause of obtaining the evidence.

## ANALYSIS

### I.   *Whether Skeen Displayed Alert Behavior Before Entering the Car*

In finding that Skeen displayed alert-type behavior before and after being allowed to enter the car, Judge Gossett credited the testimony of Officer Bossman and Sergeant Van Buren. Judge Gossett gave "little weight" to Steven D. Nicely's testimony. A legal argument supporting the objection was not provided either in the Defendant's Statement or supporting brief, and, therefore, this objection may be considered abandoned. The Court assumes that the Defendant's argument would be that the opinions of his expert, Nicely, should be credited more than the opinions of Officer Bossman and the government's expert, Sergeant Van Buren. The Court agrees with Judge Gossett's credibility assessment for the reasons stated in his Findings and Recommendation. (Filing No. 59, at 36 n.3.) Therefore, the objection to this factual finding is denied, and Judge Gossett's factual findings are adopted in their entirety.

## II.   *Officer Bossman's Actions; Exclusionary Rule*

### A.   *Officer Bossman's Actions*

Judge Gossett concluded that Officer Bossman's actions in "affirmatively opening the passenger door, deliberately leaving the door open, and then directing or allowing his service dog to enter the defendant's vehicle when he did not have permission to do so" violated Gastelo's Fourth Amendment rights. (Filing No. 59, at 34.) However, Judge Gossett relied on *Herring v. United States,* 129 S. Ct. 695, 700-01 (2009), in concluding that the exclusionary rule does not apply because Officer Bossman's actions were not a "substantial and deliberate"[2] Fourth Amendment violation.

Herring was arrested on a recalled warrant because, due to an uncertain human error, a warrant clerk's computer records did not reflect the warrant's status as recalled. *Id.* at 698. The Eleventh Circuit Court of Appeals affirmed the district court's order denying Herring's motion to suppress because the arresting officers acted in a good-faith belief that the warrant was still active. The circuit court also reasoned that the law enforcement official responsible for the error acted negligently, and the error was "attenuated from the arrest." *Id.* at 699. In a 5 to 4 decision, the Supreme Court affirmed the Eleventh Circuit. The Court described situations in which it has applied the good-faith rule, including cases in which a judge's and a judicial employee's errors led to Fourth Amendment violations. *Id.* at 701. In the final example that involved judicial error, the Court noted: the exclusionary rule's purpose is to limit police rather than judicial conduct; court employees

---

[2]Although the objection refers to the phrase "substantial and deliberate," the legal argument in Gastelo's brief concerns only the "deliberate" prong. (*Compare* Filing No. 62, ¶ 2 *with* Filing No. 63, at 8-12.) Therefore, the Court will consider only that prong.

were unlikely to subvert the Fourth Amendment; and, most important, applying the exclusionary rule in that case would likely have no significant effect in deterring future errors. *Id.* (discussing *Arizona v. Evans,* 514 U.S. 1, 15 (1995)). The *Herring* Court considered the same issue raised in *Evans* in the context of police, rather than judicial, error. The Court emphasized its scrutiny of the "'flagrancy of the police misconduct.'" *Id.* (quoting *United States v. Leon,* 468 U.S. 897, 911 (1984)). The Court also reiterated that the exclusionary rule should be used only if a law enforcement officer knew, or should have known, that the search violated the Fourth Amendment. *Id.* at 702 (quoting *Illinois v. Krull,* 480 U.S. 340, 348-49 (1987)). The Court described instances in which the exclusionary rule was used, concluding that recurring and unattenuated negligence is the type of conduct that might lead to evidence being suppressed. *Id.* For example, the Court described cases in which officers: broke into a defendant's home, took evidence, and returned later with a U.S. Marshal for more evidence, all without a warrant or probable cause, *Weeks v. United States,* 232 U.S. 383, 393-94 (1914); took every paper they could find absent any authority, *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 390 (1920); and forced a defendant's door open, would not let her attorney enter, and showed a false warrant as authority for the search, *Mapp v. Ohio,* 367 U.S. 643, 644-45 (1961). The exclusionary rule is meant to "deter reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence. *Herring,* 129 S. Ct. at 702. Finally, the Court stated that the goal of deterrence must be weighed against the "'substantial societal costs'" of implementing the rule. *Id.* n.4 (quoting *Krull,* 480 U.S. at 352-53 (quoting *Leon,* 468 U.S. at 907)).

The instant case lies between the extremes described in *Herring*. Officer Bossman was negligent in closing one door yet leaving the other car door open. He walked past the open door several times, and allowed Skeen to place his snout inside the car. Twice, he directed Skeen into the car through the open door. Officer Bossman candidly testified that he knew it was unconstitutional for him to leave the car door open and to direct his dog inside the car during the exterior sniff and that his actions were contrary to his training. (Filing No. 88:7-9, 104:7-9, 106:1-3.) His actions were more than a momentary incidence of negligence, yet they do not approach the most extreme cases discussed in *Herring*.

In deciding this issue, the Court watched the DVD of the canine sniff and reviewed Officer Bossman's testimony several times. The Court also considered the need for deterring similar conduct on the part of other law enforcement officers. In the final analysis, Officer Bossman's testimony, quoted by Judge Gossett, in which Officer Bossman stated that he was watching four people and forgot to shut the door, was decisive in persuading this Court that Officer Bossman's actions were not a deliberate Fourth Amendment violation. (Filing No. 59, at 35-36 (quoting Filing No. 52, 85:7-86:3).) Officer Bossman did not waiver from his assertion that he was preoccupied and neglected to close the door. After careful consideration, this Court agrees with Judge Gossett's finding that "Officer Bossman's admitted mistake did not constitute a '. . . deliberate' violation of the defendant's" Fourth Amendment rights. This objection is denied.

### B.     *The Exclusionary Rule*

Judge Gossett stated: "I am persuaded that Skeen would have indicated at the exterior of the Cadillac even if he had not been allowed inside the vehicle. The dog's entry into the vehicle was not essential to the outcome of the canine sniff search." (Filing No. 59,

7

at 37.)  Judge Gossett relied on *United States v. Peralez,* 526 F.3d 1115, 1121 (8th Cir. 2008), in concluding that suppression in this case is not appropriate because the dog's entries into the car were not the but-for cause of the location of the evidence.  (Filing No. 59, at 36.)

Gastelo argues that it cannot be said that Skeen's three entries into the vehicle had no effect on his eventual indication on the fourth circling of the car and, therefore, Judge Gossett's conclusion is mere speculation.

The government argues that the inevitable discovery doctrine applies.  The doctrine has been stated to require the government to prove the following: 1) reasonable probability exists that the evidence would have been discovered lawfully in the absence of police misconduct; and 2) the government was actively pursuing a substantial, alternative line of investigation.  *United States v. Romo-Corrales,* 592 F.3d 915, 920 n.5 (8th Cir. 2010).  However, the Eighth Circuit has adopted the "prophylactic rule" clarifying that the second prong need not be proved in every case.  *United States v. Thomas,* 524 F.3d 855, 862 (8th Cir. 2008).[3]

The Court carefully considered the application of the first prong to this test after a thorough review of the hearing transcript and evidence, including the DVD of the canine sniff.  The Court credits Officer Bossman's and Sergeant Van Buren's testimony, which is

---

[3]In discussing the second prong, the government stated that the Fourth Amendment violation occurred due to Skeen's presence inside the car, but that Skeen alerted outside the car.  Therefore, the government argues that the government was pursuing two alternative lines of investigation.  The Court views the investigation as a single investigation.  However, in accordance with the Eighth Circuit's adoption of the prophylactic rule regarding the second prong of the test, this Court concludes that an alternative line of investigation need not be found.

8

corroborated by Skeen's actions shown on the DVD. Skeen's actions illustrate his detection of odor generally, followed by his specific indication of the location of the illegal narcotics. The government has met its burden of showing "reasonable probability" exists that the evidence would have been discovered lawfully in the absence of Officer Bossman's improper actions. Therefore, this objection is denied.

For the reasons discussed,

IT IS ORDERED:

1. The Magistrate Judge's Findings and Recommendation (Filing No. 59) are adopted in their entirety;

b. The Defendant's objections to the Findings and Recommendation (Filing No. 62) are denied; and

3. The Defendant's motion to suppress (Filing No. 23) is denied.

DATED this 8th day of April, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge